## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DAVID SANCHEZ, on behalf of himself and all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **CIVIL ACTION NO:** _____ |
| **v.** | ) ) | |
| **ORANGE TREE EMPLOYMENT SCREENING LLC and LAUNCH TECHNICAL WORKFORCE SOLUTIONS, LLC,** | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) ) | |

## CLASS ACTION COMPLAINT

PLAINTIFF DAVID SANCHEZ, on behalf of himself and all others similarly situated, files this Complaint and states as follows:

1.    Mr. Sanchez brings this action against Defendants Orange Tree Employment Screening LLC ("Orange Tree") and Launch Technical Workforce Solutions, LLC ("Launch") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2.    Congress passed the FCRA to protect consumers from the harm caused by inaccurate reporting.  To this end, the FCRA requires that all consumer reporting agencies (CRAs) that report criminal background

information to employers use "reasonable procedures to ensure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

3.     The FCRA provides special protections when a CRA furnishes "items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment." 15 U.S.C. § 1681k. In these situations, CRAs must either: (1) notify the consumer of the release of the public record information at the time the information is furnished to the user; or (2) establish strict procedures to maintain complete and up-to-date public record information.

4.     Defendant Orange Tree violated the FCRA when it published inaccurate, incomplete and not up-to-date public record information about Mr. Sanchez in an employment background report. Specifically, Orange Tree associated Mr. Sanchez with multiple criminal records that did not belong to him and, as a result, Mr. Sanchez was denied a job and suffered other damages.

5.     Additionally, Congress created heightened standards regulating how employers obtain and use information in consumer reports to conduct checks on employees and prospective employees. 15 U.S.C. § 1681b(b)(3).

6.     The FCRA requires employers to provide certain notices to the subjects of the consumer reports before taking an adverse employment action whenever that action is based, even just in part, on a consumer report. Specifically, pursuant to 15 U.S.C. § 1681b(b)(3):

> in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>
> (i)    a copy of the report; and
>
> (ii)   a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3)1 of this title.

7.     The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before an employment decision has been made.  Providing a copy of the consumer report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete and misleading public-records-based reports.

8.     Congress permitted consumers to sue to redress a breach of these substantive rights and, if successful, to be awarded actual, statutory and/or punitive damages.  15 U.S.C. §1681n.

9.     Defendant Launch violated Section 1681b(b)(3) of the FCRA when it took adverse employment actions against Mr. Sanchez and other putative class members based on information in a consumer report without first providing Mr. Sanchez and other class members with a copy of the pertinent consumer report and statement of their rights under the FCRA and without providing them with a reasonable opportunity to respond to the information in the report.

10.     Nearly every court to consider such practices has found them to be unlawful and certified a class action based on such allegations.  *See Singleton v. Domino's Pizza, LLC*, No. DKC 11-1823, 2013 WL 5506027 (D. Md. Oct. 2, 2013) (class settlement for violation of Section 1681b(b)(3)(A)); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880 (S.D. Oh. May 24, 2013) (class settlement for pre-adverse action class); *Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012) ("The 'clear purpose' of this section is to afford employees time to 'discuss reports with employers or otherwise respond before adverse action is taken.") (internal quotations omitted); *Reardon v. Closetmaid Corp.*, No. 2:08-cv-01730, 2011 WL 1628041 (W.D. Pa. Apr. 27, 2011) (certifying class against company for employment applicants who did not receive pre-adverse action notice);

*Beverly v. Wal-Mart Stores, Inc.*, CIV. A. 3:07CV469, 2008 WL 149032 (E.D. Va. Jan. 11, 2008) ("Simultaneous provision of a consumer report with a notice of adverse action fails to satisfy § 1681b(b)(3)(A) requirement. Accordingly, the Court finds that a reasonable jury could find that defendant violated § 1681b(b)(3)(A) when it took adverse action before it provided plaintiff with a copy of his consumer report."); *Williams v. Telespectrum*, Civ. No. 3:05cv853, 2006 WL 7067107 (E.D. Va. 2006) (An employer "must provide a copy of the report with "a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report…")  It is also contrary to longstanding regulatory guidance from the Federal Trade Commission.  *See* Federal Trade Commission letter dated June 9, 1998 to A. Michael Rosen, Esq., regarding Section 604(b), Section 605, and Section 607 of the FCRA ("[15 U.S.C. § 1681b(b)(3)(A)] requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken.  Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information….")).

11.    Based on the foregoing violations, Mr. Sanchez asserts claims under the FCRA against Defendant Launch on behalf of himself and a class of Launch's prospective and current employees.

12.    On behalf of himself and the putative class, Mr. Sanchez seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief pursuant to the FCRA against Launch.

## JURISDICTION AND VENUE

13.    This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

14.    Venue is proper in this Court under 28 U.S.C. § 1391(b) as Defendants regularly conduct business in this district and division and a substantial part of the events giving rise to the claims occurred in this district and division.

15.    Defendant Orange Tree contracts to supply services or things in Georgia.  It sells consumer reports in Georgia and produces consumer reports on Georgia residents, including the one it sold on Mr. Sanchez. Orange Tree also gathers and maintains substantial public records data from Georgia.

16.    Defendant Launch regularly contracts to supply goods and services in Georgia, and regularly solicits and does business in Georgia.

## PARTIES

17.    Mr. Sanchez is a resident of Georgia.  He also is a natural person and a "consumer" as protected and governed by the FCRA, 15 U.S.C. § 1681a(c).

18.    Defendant Orange Tree is a Minnesota limited liability company that conducts business throughout the United States.

19.    At all relevant times hereto, Orange Tree was a consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f).

20.    According to Orange Tree, when it conducts a background check investigation, "in all cases . . . [it] balances the need for accuracy and thorough search methods with the expectation of speed and efficiency." (*See* http://www.orangetreescreening.com/services/criminal-background-research/county-statewide-federal-criminal-record-searches, last visited May 18, 2017.)

21.    Defendant Launch is a Delaware limited liability company.

22.    Launch is a staffing solution company through which Mr. Sanchez received an offer of employment.

23.    Launch "take[s] care of recruiting, hiring, compliance, payroll, employment taxes and benefits" for its clients.    (*See*

http://www.launchtws.com/contract-staffing-services/, last visited May 18, 2017.)

24.    Launch ordered the consumer reports at issue in this action. Accordingly, it was a "user" of the consumer reports.

**FACTUAL ALLEGATIONS RELATING TO MR. SANCHEZ**

25.    In November 2016, Mr. Sanchez applied with Launch for a position in aircraft maintenance in Georgia.

26.    On or about November 30, 2016, Mr. Sanchez received a conditional offer of employment.   The offer, which was pending the successful completion of a background check, contained a start date in late December, included compensation at a rate of $18 per hour, and Launch was to pay for 100% of Mr. Sanchez's healthcare coverage after 90 days of employment.

27.    Mr. Sanchez accepted the offer and authorized Launch to obtain a consumer report on him "as part of its screening and hiring process."

28.    According to the authorization that Mr. Sanchez signed, "[t]he primary objective of any investigation will be to verify information you provided on your application in connection with your application for employment or continued employment with [Launch]."

29.    Upon information and belief, Launch then ordered a consumer report from Orange Tree through Orange Tree's "New Hire Package" on or about November 30, 2016.

30.    Upon information and belief, Orange Tree then furnished Mr. Sanchez's consumer report to Launch.

31.    The consumer report that Orange Tree furnished to Launch was used or expected to be used or collected for the purpose of evaluating Mr. Sanchez for employment purposes.

32.    Upon information and belief, the consumer report that Orange Tree furnished to Launch contained public record information likely to have an adverse effect on Mr. Sanchez's ability to obtain employment.

33.    Orange Tree did not provide Mr. Sanchez with notice of the fact that it was reporting adverse public record information about him at the time it furnished the information to Launch.

34.    On or about December 5, 2016, Mr. Sanchez received a telephone call from Launch.

35.    The Launch representative told Mr. Sanchez that the company would be unable to move forward with his employment because of the felony on his background report.

36.     When it informed him that it would not move forward, Launch did not provide Mr. Sanchez with a copy of the background report or his rights under the FCRA.

37.     In response to Launch's decision, Mr. Sanchez attempted to tell the Launch representative that he did not have a felony or any criminal record whatsoever, but the Launch representative told him that there was nothing he could do and Mr. Sanchez would need to speak with Orange Tree about the felony.

38.     Mr. Sanchez was devastated, as he did not have a criminal record and Launch did not give him an opportunity to see the criminal record information on which it was denying him a job.

39.     On or about December 7, 2016, Mr. Sanchez called Orange Tree and disputed the adverse criminal record information contained in his consumer report.

40.     Upon information and belief, Orange Tree initiated a reinvestigation based on Mr. Sanchez's dispute.

41.     Upon information and belief, on December 12, 2016, Orange Tree confirmed that the adverse criminal record information that it had reported about Mr. Sanchez did not belong to him.

42.    Upon information and belief, on December 13, 2016, Orange Tree removed the adverse criminal record information from Mr. Sanchez's consumer report and provided a copy of the amended report to Launch.

43.    That same day, Orange Tree sent a letter to Mr. Sanchez in which it informed him that it had completed its reinvestigation and amended his original consumer report.

44.    Orange Tree enclosed with the letter an amended copy of Mr. Sanchez's consumer report.  The amended copy did not contain any adverse criminal record information about Mr. Sanchez.

45.    Unfortunately for Mr. Sanchez, Orange Tree's clean consumer report was too little, too late, as Launch still refused to move forward with Mr. Sanchez's employment.

46.    By failing to engage in the required pre-adverse and adverse action processes, Launch denied Mr. Sanchez information to which he was statutorily entitled.

47.    On March 20, 2017, still having not been provided with a copy of the consumer report on which Launch denied him employment, Mr. Sanchez sent a request to Orange Tree for his "complete Orange Tree file, including a list of all employers or other entities to which you sent reports about me, and copies of all such reports."

48.    Orange Tree responded to Mr. Sanchez's request on April 17, 2017.

49.    While Orange Tree provided Mr. Sanchez its amended consumer report that showed no criminal record for Mr. Sanchez, it failed to provide him with the original consumer report that it provided to Launch.

50.    Orange Tree did, however, provide Mr. Sanchez with certain computer code that allowed Mr. Sanchez to see for the first time the criminal record information with which Orange Tree associated him.

51.    According to the documents provided by Orange Tree, Orange Tree reported to Launch that Mr. Sanchez had committed the following crimes:

- A felony of aggravated assault with deadly weapon;

- Battery (domestic violence) with 90 days in jail;

- Criminal mischief $200 or less with probation and a fine;

- Driving with license cancelled, suspended or revoked with a fine;

- Three counts of contribution to delinquency or dependency of a child; and

- False name to law enforcement officer.

52.     Of course, none of these records belonged to Mr. Sanchez, as he does not have any criminal record whatsoever.

53.     Nonetheless, upon information and belief, Orange Tree reported these incorrect criminal records to Launch, which caused Mr. Sanchez significant damage.

54.     Orange Tree grossly disparaged Mr. Sanchez, and as of result of Defendants' conduct, Mr. Sanchez has suffered actual damages in the form of lost employment opportunities, harm to reputation, and emotional distress, including frustration, stress, humiliation and embarrassment.

## FACTS RELATING TO LAUNCH'S BUSINESS PRACTICES

55.     Defendant Launch routinely conducts background checks on its job applicants as part of a standard screening process.

56.     Additionally, Launch also conducts background checks on existing employees from time-to-time during the course of their employment.

57.     Launch obtains and uses consumer reports from consumer reporting agencies as part of its background check process.  These reports constitute "consumer reports" for purposes of the FCRA.

58.     The FCRA provides that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in

part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report[,] and a description of the rights of the consumer under this title…" 15 U.S.C. § 1681b(b)(3)(A).

59.    The FCRA defines "person" as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity."  15 U.S.C. § 1681a(b). Defendant is a person as defined by the FCRA.

60.    When used in connection with a consumer report, the FCRA defines "employment purposes," to mean "a report used for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee."  15 U.S.C. § 1681a(b).

61.    In using consumer reports to determine employees' eligibility, Launch used consumer reports for employment purposes.

62.    The FCRA defines "adverse action" to include "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."    15 U.S.C. § 1681a(k)(1)(B)(ii).  Additionally, "adverse action" includes any action taken or determination that is (i) made in connection with an application that was

made by, or a transaction that was initiated by, any consumer, …; and (ii) adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(iv).

63.    Under the FCRA, Launch is a "person" that uses consumer reports for "employment purposes" and takes "adverse action" against consumers based in whole or in part on information in their consumer reports.

64.    Accordingly, 15 U.S.C. § 1681b(b)(3)(A) requires Launch to send each consumer a pre-adverse action letter containing a copy of their report and a description of their rights before taking adverse action against them.

65.    Upon information and belief, Launch typically does not provide job applicants or employees with a copy of their consumer report or a copy of their rights under the FCRA before taking adverse employment action against them based on information in such reports.

66.    This practice violates one of the most fundamental protections afforded to employees under the FCRA, and also runs counter to longstanding regulatory guidance. (*See* Federal Trade Commission letter dated June 9, 1998 to A. Michael Rosen, Esq., regarding Section 604(b), Section 605, and Section 607 of the FCRA) ("[15 U.S.C. § 1681b(b)(3)(A)] requires that all employers who use consumer reports provide a copy of the

report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action.   Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information….")).

67.    By failing to engage in the required pre-adverse and adverse action processes, Launch denies its applicants and employees information to which they are statutorily entitled.

68.    By failing to provide the required information, Launch denies applicants and employees a fair opportunity to proactively address red flags in their consumer reports.

69.    The FCRA's requirement also helps to protect employees and applicants with respect to future employment since they can attempt to clean up their consumer report, even if the information in the report is accurate, if they receive the required information from the employer.   Thus, when applying for other jobs, if the employee or applicant received the required notice that similar consumer reports will be used, they can make educated decisions whether to continue in the hiring process and possibly avoid associated expenses such as for interviews.

## CLASS ACTION ALLEGATIONS

70.    Mr. Sanchez asserts his claims against Launch on behalf of a putative "Pre-Adverse Action Class" defined as follows:

> **Proposed Pre-Adverse Action Class:**  All employees or prospective employees of Launch in the United States (including all territories and political subdivisions of the United States) who were the subject of a consumer report procured by Launch (or that Launch caused to be procured), which contained any negative (derogatory) information about them, and for whom Launch failed to provide that employee or prospective employee with a copy of their consumer report and/or FCRA summary of rights before Launch took adverse employment action against them, within the period prescribed by the FCRA, 15 U.S.C. § 1681p, prior to filing this action.

71.    Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

72.    <u>Numerosity</u>:  Upon information and belief, the Putative Class is so numerous that joinder of all class members is impracticable.  Launch regularly obtains and uses information in consumer reports to conduct background checks on prospective and existing employees.   Plaintiff believes that during the relevant time period, hundreds of Launch's prospective and current employees satisfy the definition of the Putative Class.

73.    <u>Typicality</u>:  Plaintiff's claims are typical of the members of the Putative Class.   Launch typically uses consumer reports to conduct

background checks on prospective and current employees. Launch typically does not provide these individuals with a copy of their consumer report and a description of their rights under the FCRA before taking an adverse employment action that is based, even in part, on the consumer report. The FCRA violations suffered by Plaintiff are typical of those suffered by other Putative Class members, and Launch treated Plaintiff consistent with other Putative Class members in accordance with its standard policies and practices.

74.    Adequacy:    Plaintiff will fairly and adequately protect the interests of the Putative Class, and has no conflict of interest with any member of the Putative Class. Plaintiff has retained counsel experienced in complex class action litigation.

75.    Commonality:    Common questions of law and fact exist as to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

  a. Whether Launch uses consumer report information to conduct background checks on prospective and current employees;

  b. Whether Launch provides prospective and current employees with a copy of their consumer report and a description of their rights under the FCRA before taking an adverse employment action that is based, even in part, on the consumer report;

c.  Whether Launch's violations of the FCRA were willful;

d.  The proper measure of statutory damages; and

e.  The proper form of injunctive and declaratory relief.

76.    This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Launch has acted or refused to act on grounds that apply generally to the Putative Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

77.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Launch's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the Putative Class do not have an interest in pursuing separate actions against Launch, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Launch by any members of the Putative Class on an individual basis. Class

certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Launch's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

78.    Plaintiff intends to send notice to all members of the Putative Class to the extent required by Rule 23. The names and addresses of the Putative Class members are available from Launch's records.

## FIRST CLAIM FOR RELIEF

## (15 U.S.C. § 1681e(b))

## (Orange Tree)

79.    Plaintiff realleges Paragraph Nos. 1-78 as if fully set forth herein.

80.    Orange Tree violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report furnished regarding Plaintiff.

81.    Orange Tree knew or should have known about its obligations under the FCRA. These obligations are well established in the plain

language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

82.    Orange Tree obtained or had available substantial written materials that apprised it of its duties under the FCRA.

83.    Despite knowing of these legal obligations, Orange Tree acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

84.    Orange Tree's violation of the FCRA was willful, rendering it liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Orange Tree was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

85.    As a result of this conduct by Orange Tree, Plaintiff suffered actual damages including without limitation, by example only and as described herein on his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## SECOND CLAIM FOR RELIEF

### (15 U.S.C. § 1681k)

### (Orange Tree)

86.    Plaintiff realleges Paragraph Nos. 1-78 as if fully set forth herein.

87.    Section 1681k of the FCRA requires that when a consumer reporting agency supplies public record information to a user for employment purposes, and such information is likely to have an adverse effect on employment, the CRA must:

(1)  at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

(2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

88.    Orange Tree violated 15 U.S.C. § 1681k by failing to notify Plaintiff that it was reporting public record information about him at the time it furnished such information to Launch, and failing to maintain strict procedures to ensure that the public record information it was reporting was complete and up to date.

89.    Orange Tree knew or should have known about its obligations under the FCRA.   These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

90.    Orange Tree obtained or had available substantial written materials that apprised it of its duties under the FCRA.

91.     Despite knowing of these legal obligations, Orange Tree acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

92.     Orange Tree's violation of 15 U.S.C. § 1681k was willful, rendering it liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Orange Tree was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

93.     As a result of this conduct by Orange Tree, Plaintiff suffered actual damages including without limitation, by example only and as described herein on his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## THIRD CLAIM FOR RELIEF

## (15 U.S.C. § 1681g)

## (Orange Tree)

94.     Plaintiff realleges Paragraph Nos. 1-78 as if fully set forth herein.

95.     The purpose underlying the FCRA is to require that CRAs adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer.   15 U.S.C. § 1681,

"Congressional findings and statement of purpose."  To achieve this purpose, consumers have a right to request all information in files maintained by consumer reporting agencies to ensure that it is accurate and up to date.

96.    Section 1681g of the FCRA requires that upon request from a consumer, a consumer reporting agency shall clearly and accurately disclose to the consumer "[a]ll information in the consumer's file at the time of the request."

97.    The FCRA defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."  15 U.S.C. § 1681a(g).

98.    Orange Tree violated 15 U.S.C. § 1681g by failing to provide all of the information in Plaintiff's file at the time of the request.

99.    By failing to comply with 15 U.S.C. § 1681g, Launch denied Plaintiff information to which he was statutorily entitled.

100.   By failing to provide the required information, Launch denied Plaintiff a fair opportunity to proactively address red flags in his consumer report.

101.   Orange Tree knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain

language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. *See Cortez v. Trans Union, L.L.C.*, 617 F.3d 688, 712 (3d Cir. 2010); *Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 848 F. Supp. 2d 532, 544-45 (E.D. Pa. 2012); *Holmes v. Telecheck Int'l.*, 556 F. Supp. 2d 819, 838 (M.D. Tenn. 2008).

102.   Orange Tree obtained or had available substantial written materials that apprised it of its duties under the FCRA.

103.   Despite knowing of these legal obligations, Orange Tree acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

104.   Orange Tree's violation of 15 U.S.C. § 1681g was willful, rendering it liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Orange Tree was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

105.   As a result of this conduct by Orange Tree, Plaintiff suffered actual damages including without limitation, by example only and as described herein on his behalf by counsel: damage to reputation, embarrassment, humiliation and other emotional and mental distress.

## FOURTH CLAIM FOR RELIEF

### (15 U.S.C. § 1681b(b)(3))

### (Launch-Class Claim)

106.   Plaintiff realleges Paragraph Nos. 1-78 as if fully set forth herein.

107.   Launch violated Section 1681b(b)(3)(A) of the FCRA by failing to provide Plaintiff and others similarly situated with a copy of their consumer report and a description of their rights under the FCRA before taking an adverse employment action against them that was based, even in part, on the consumer report.

108.   The foregoing violations were willful.  Launch knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.  Launch acted in deliberate and reckless disregard of its obligations to the rights of Plaintiff and other Disclosure Class members under 15 U.S.C. § 1681b(b)(2)(A)(i).  Launch's willful conduct is reflected by, among other things, the following facts:

    a. Launch is a large company with access to legal advice through its own attorneys and outside counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

    b. Launch knew or had reason to know that its conduct was inconsistent with FTC guidance and case law interpreting the FCRA and the plain language of the statute; and

c. Launch voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

109. Plaintiff and the Pre-Adverse Action Class members are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n.

110. Plaintiff and the Pre-Adverse Action Class members are also entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a. Determining that this action may proceed as a class action;

b. Designating Plaintiff as a class representative and designating Plaintiff's counsel as counsel for the Class;

c. Issuing proper notice to the Putative Class at Defendant Launch's expense;

d. Entering judgment for Plaintiff against Defendants for actual and/or statutory damages, punitive damages, costs, and reasonable attorneys' fees as provided by 15 U.S.C. § 1681n and 15 U.S.C. § 1681o;

e.      Granting other and further relief, in law or equity, as this

Court may deem appropriate and just.

### DEMAND FOR JURY TRIAL

**PLAINTIFF hereby demands a jury trial on all claims for which**

**he has a right to a jury.**

DATED: May 25, 2017

By: /s/ Andrew L. Weiner
     Andrew L. Weiner
     Georgia Bar No. 808278
     Jeffrey B. Sand
     Georgia Bar No. 181568
     THE WEINER LAW FIRM LLC
     3525 Piedmont Road
     7 Piedmont Center, 3rd Floor
     Atlanta, Georgia 30305
     (404) 205-5029 (Tel.)
     (404) 254-0842 (Tel.)
     (866) 800-1482 (Fax)
     aw@atlantaemployeelawyer.com
     js@atlantaemployeelawyer.com

     COUNSEL FOR PLAINTIFF